Through the TPS program, Congress created an expressly temporary form of relief for aliens from countries that are experiencing temporary and extraordinary conditions related to a particular event. As part of the program, Congress expressly barred judicial review of any determination with respect to a TPS designation, extension, or termination decision. Here, however, plaintiffs wish to or attempt to characterize their claims, they are fundamentally challenging the Secretary of Homeland Security's decision to terminate TPS for Haiti. And accordingly, those claims are barred. I think it's particularly telling that plaintiffs... Can you say that the presumptions favoring judicial review of agency action is heightened when a statute purports to deny any judicial forum for a colorable constitutional claim? That is, are you saying that the... When you look at the TPS jurisdictional bar statement, should that apply in the same way with respect to the APA claims as to the Equal Protection Claims, for example? Well, Your Honor, as you know, the Supreme Court has said it has required a clear statement to bar constitutional claims. Now, we think the statute as worded is sufficiently clear to bar those claims in barring all determinations, review of all determinations. But to the extent Your Honors disagreed with that and felt it wasn't clear enough, I think, A, it goes to show that it's certainly clear enough to bar the APA claims, and it's telling that plaintiffs have failed to cite any APA claim or any case in which a court has allowed an APA claim like theirs to proceed. And then on the Equal Protection Claim, that fails, even if this court were to conclude that it's not barred clearly enough, that I think... Is the Equal Protection Claim against agency action not an APA claim? So as I read the APA, right, Section 703 says whatever, you can bring any challenged agency action based on any kind of source of law, but then under 706, it's all governed by APA standards, isn't it? Like, what does it mean that it's not an APA claim? No, I mean, to be clear, we think that the Equal Protection Claim, as Your Honor pointed out, is governed by the APA, since the APA does also cover agency action in violation of constitutional right. So, yes, we think it is clear to cover... You're just saying that it's possible for a court to decide that the bar on judicial review is clear enough to bar normal APA claims, but not to bar APA claims premised on constitutional violations? I mean, to be clear, our position is that it bars both, but, you know... No, I understand. The court could decide that. Here, go ahead. I have a question that would arise from a claim barring the constitutional... I'm not familiar with the court actually addressing it specifically in the context of an APA claim, but you're, you know, drawing that distinction in this particular context, but, yes, I mean, I think our position is at a minimum, it bars your standard APA claims based on violations of, you know, arbitrary and capricious decision-making and statutory violations, and we think it's clear enough to cover constitutional violations, but this court could potentially hold otherwise. You'd agree also that the TTS statute in other places, or other parts of the INA, rather, extends jurisdictional bars to constitutional claims more expressly than here, right? I mean, the TTS bar doesn't mention constitutional claims, it's a general reference to review of determinations, but in 1252E9, for example, you know, Congress spoke directly to precluding judicial review of constitutional provisions, and this is obviously less precise than that. I mean, I take your point is that it, in your view, it covers both kinds of claims, whether they both come through the APA and the same standard ought to apply, and there's no need, as I take it, for an explicit reference to constitutional claims. Is that, am I right? That is our position, that yes, it is, because it refers broadly to any determination with respect to designation, that it would cover both types. Can I ask you a question about the, what we're calling the equal protection claim? So, in your, the district court didn't find likelihood of success on the merits of that claim, it just said that there were serious questions going to the merits, right? That's correct. And so, in your brief, you challenge, you say that our serious questions standard is inconsistent with Winter, but I guess what I'm curious about is, haven't we also said, you know, most recently, in the Deutsche Bank case, that whenever you're challenging government action, you can't use the serious question standard? I mean, isn't the rescission of TPS government action? Your Honor, it certainly is government action. I apologize, I actually wasn't familiar with that aspect of the Deutsche Bank case. And so, but I would also point out, you know, even in the DACA case, for example, that just came out, the Supreme Court found that similar allegations didn't even state a plausible claim for an equal protection violation. So, even if this court felt it was bound by the equal protection, or by the serious question standard, that it wouldn't even rise to that level. But yes, I'm not familiar with the Deutsche Bank portion of it. You said in your brief that we shouldn't use the serious question standard to enjoin any action. That's right. I mean, it's inconsistent. Now, obviously, this court has, you know, unless it overruled by a later Supreme Court president or en banc, you know, found. So, we recognize that, but we do agree that it is inconsistent with the Winter case. Our argument is that it is inconsistent with the Winter case. Could I ask you to turn for a minute to the administrative record here? I had some confusion about what the government's position ultimately is on what the administrative record is, what the supports and what was considered directly or indirectly, I guess, by the agency in rendering its determination. Because there was an original record that was quite short, I think it's 199 pages, that was submitted on motion for supplementation for the complete record. You got up to over 300 pages. But then there were materials that were produced in Ramos, and then additional materials, obviously, that were obtained here, including depositions by means of a court order. But particularly with regard to a policy question, you know, where the certified administrative record is rarely subject to dispute. Here, it seems to me that there's a lot that, you know, the boundary between what's in the deliberative process and what are materials that are suitable and proper for consideration by the agency in rendering its decision, and for public scrutiny in holding the agency accountable for its decision, that it's remarkably fluid. Could you address those concerns and tell me what you believe the administrative record is here? Sure. I mean, you know, just to be sort of the factual question of what's in the administrative record, and we produced in the joint appendix, I believe it's the entirety of the second volume and the beginning of the third volume, what we consider to be the full administrative record in this case. It includes, I think, as Your Honor suggested, both some initial materials and then a supplemented material. And I think that actual record is broader than… Pardon me for interrupting, but that's about 300 pages. Yeah, I think that's right, 350, something around that order. And I think, actually, in many ways, this is a much more robust record than you see in some cases. Obviously, it depends on the case in that it includes a lot of the Secretary's kind of internal notes and thought processes and so forth that you wouldn't ordinarily see in the record. Now, we did suggest, and at one point, I don't know, in this litigation, but certainly in the Ramos litigation, that those were deliberative materials that shouldn't have been in the record, but we're, at this point, not contesting that. And that's included as well. And I think, you know, especially when we're talking – fundamentally, these are, you know, putting the equal protection claim aside, these are kind of run-of-the-mill APA claims, and, you know, the standard practice in an APA case is to review the decision on the record. So what's the material outside the administrative record that you are contesting? Yeah, okay, so that – yeah. So one of the main things we are contesting is the deposition testimony, I think, in particular, the deposition testimony of – it was a former USCIS director from the last administration, which the plaintiffs rely on. There was also some email, you know, traffic and so forth that plaintiffs rely on at various points, and the district court relied on as well. That's not part of the record. Did you object to the introduction of the deposition testimony at the trial? I would have to confirm. I mean, we certainly objected to – at several points to the use of anything beyond the administrative record. I don't know whether – I mean, at that point, the court had ruled that it was admissible. So, yeah, I'm pretty sure we did object ahead of time. You objected to the trial, apparently. Is that what you're saying, to having a trial at all with testimony? We did, and I think – and we specifically objected to considering anything other than – to the extent that the district court wanted to have a trial on certain issues like the harms and so forth. But we – I mean, the court made a ruling on this. You said the court should not go beyond the administrative record. Right. And the court ruled against you on that question. Yes, exactly, in unpermitted discovery. So we objected early in several points. There are some – there are – you have one minute left on your main argument, but we can go a little bit longer. But in these other cases, including at the Supreme Court level, the courts do look at what you're suggesting are statements that are outside the administrative record, statements that appear in the public. And here, the plaintiffs point to some very specific comments that do seem highly relevant to the question of whether there was animus. How do you respond to that? Well, Your Honor, I mean, to the extent that plaintiffs are relying on specific comments made by the president, for example, I think those are addressed in the DACA case where you have an independent decision maker, which we have here, the Secretary of Homeland Security, which was the case there too, that it is not proper to impute animus to her, even if you accept the plaintiff's characterization of those comments. And I think here – But what if there is evidence of substantial influence from the White House? Well, again, I think when the record viewed – and there is a lot about her internal thought process in there viewed objectively. You see that, although there may have been influence from the White House, the reason the White House was giving for wanting to terminate TPS was based on the absence of conditions in the country. I mean, in the Department of Commerce case over the census, didn't the Supreme Court say specifically that influence from the White House is not out of the ordinary and it by itself is not a justification for looking beyond the administrative record because it's not a showing of bad faith? That's right, Your Honor. I mean, and of course, in a situation like this where the statute requires consultation on a foreign policy matter, you would expect it in – So the Supreme Court says explicitly it is normal for a new administration to come in with ideas about what they want to accomplish, and it is normal for agency officials to consult with the White House, and none of that is out of the ordinary or justifies expanding or going beyond the administrative record. And it's only when the court said it became apparent that the justification the agency gave was a false justification and couldn't possibly explain the agency action that the court said it was justified. So here, just this idea that it was – the decision was being influenced by the White House, hasn't the Supreme Court already told us that that's not a justification for expanding the administrative record? Yes, Your Honor. I think that's a fair characterization of the census case. And here I think – So are you – it's the government conceding that there was influence from the White House, but you just think it's not inappropriate? I mean I guess I – certainly the White House shared its views on whether that's in the record itself. The problem is this. I mean I personally do not think that influence from the White House in and of itself is bad. Like you say, a new administration comes in. It can set policy. But what happens if, as a district court found here, that that influence is improper influence in the sense that it is dictating a decision that should be based on objective country conditions, but instead is being dictated by political – a political agenda? So doesn't it depend on what the influence is? Well, the court, for example, pointed to the Tamino case. I think that was a case where all of the evidence points in one direction, and then you have the only possible explanation is political influence. Here that's not what we have at all. In fact, I think Perina say they're not challenging the facts that the Secretary found or her conclusions she drew from those facts. And there is a robust record showing she really did consider all of the facts here. In fact, she extended TPS for other countries as well. So – and when you look at the White House communications, including, for example, the principal's memo, all the White House is saying is we think it's time because the conditions no longer exist, that very objective standard. If TPS is terminated because the administration wants to push an America first agenda, is that consistent with the statute and the APA? Well, I just want to be clear on one thing. Obviously, such a claim would be barred. I mean such a claim is a transparent – to say that this decision was sort of preordained or pretextual, that's a challenge to the decision, and it's barred. Even if it's a meritorious claim, as Your Honor might be suggesting, it's still barred.  Unless it was barred for an unconstitutional reason, potentially, like an equal protection violation, right? I mean, if Your Honors conclude that the bar is not clear enough to cover that. But certainly, again, the Supreme Court, as has already been discussed, and Department of Commerce said simply because the decision, which is rational on its face – I was going to ask you about this question about America. So in the record, Secretary Duke says, I believe in an America first agenda, but maybe it requires termination, maybe it doesn't. I mean is there evidence about what anyone thought an America first agenda required as an outcome? No, Your Honor. I mean I think she does say at one point in the record after deciding that it's consistent with an America first approach. But I mean, of course, America first, I think, reasonably interprets at this point. Go ahead. Yeah, at one point she does say I'm not sure what the right answer is from an America first perspective. It could be to terminate for Haiti. It could be to extend for Haiti. I'm not sure. But again, I think obviously TPS is a program that focuses on the interests of aliens from abroad in America first. And so the fact that she concluded that conditions no longer warranted it, and then that conclusion was consistent with the policy. It's not untoward as the Supreme Court had pointed out in Department of Commerce. All right. You're well over your time. You have some time for rebuttal. We'll hear from the other side. Thank you, Your Honor. Good afternoon.  May it please the court. My opponent referred to this as a run-of-the-mill administrative law case. And it's not a run-of-the-mill case at all. This is an unusual case in which the plaintiffs proved and the district court found that the acting secretary of DHS didn't follow the mandatory procedures for terminating a TPS designation. It's not ordinary in terms of the conclusions reached. But I think his point is in terms of the form of the action, that it's an arbitrary, capricious challenge to agency action, that that is just a normal sort of challenge. And so it goes to the jurisdictional question. So when the court says – sorry, when Congress says there's no judicial review of every determination, when we know the way one challenges an agency determination is through an APA arbitrary, capricious challenge, isn't the most natural way to understand that? Is that as far as this kind of a case? You have to look at the language of the statute and that jurisdictional provision and case law that interprets that kind of language in a provision like that. And there are two Supreme Court cases, the McNary case and the Reno case, and several Court of Appeals decisions interpreting those cases where you had statutes with very similar language where the Congress had barred review of a determination. And the court said in McNary, and it repeated in Reno, and then this was applied in these other cases, that you couldn't – if you had a statute – when the statute said that, given the strong presumption in favor of judicial review, that you can review the procedure practices and procedures of the agency. Isn't McNary – isn't this statute – so in McNary, you had an administrative review system for individual applicants, right? And the statute says you can't have judicial review of these application decisions because it's protecting the integrity of the administrative review process. So in this statute, we actually have that, right? We have 8 U.S.C. 254a.b.5b, which says that there's going to be an administrative procedure for the denial of benefits to individuals. So Congress also is setting up an administrative review system for individual applicants. But then, unlike McNary, where they just limited the general ban on judicial review to the individual applicants, here Congress has b.5a, which then says, well, in addition to having an administrative process for individual applicants, we're going to have another bar on judicial review for all determinations. And I think you acknowledged that that covers, at least to some extent, programmatic determinations. Unlike McNary, where there wasn't a bar on sort of programmatic – review of programmatic decisions, here there is, right? So this is much broader language than we had in McNary, right? Well, I think it's a provision that bars the district court from reviewing the agency action. The language is practically identical. So the court was – in McNary, the court is construing that language and saying we – what you can't – what can't be reviewed is the determination, but the practices or procedures in making a determination are subject to review. And that's very important because Congress here has specified a procedure that the secretary has to undertake before you have a designation in place. And before the designation can be terminated, the secretary has to review the conditions in the foreign state and then make a determination. And so we did not challenge the determination itself. We didn't bring a merits challenge to determination. We didn't say – So I guess that's sort of my question because whenever you challenge any agency action to – I mean, you can explain why this is mistaken. Whenever you challenge any agency action, it looks like this, right? You say, well, the agency reached this conclusion, but it didn't require – didn't consider relevant factors it was required to consider. Or it reached this conclusion, but it misinterpreted the legal requirements or didn't comply with them. So that's what a challenge to agency action looks like. It's under APA standards. It's very rare that you have a challenge that just says you were wrong and we're entitled to release. The way we evaluate agency action under Section 706 of the APA is always a process-based challenge or generally and typically a process-based challenge, isn't it? I guess respectfully, those – if it is a process-based challenge, then I think under this statute it would be reviewable. If you look at the cases like – What's the sort of challenge that would be barred? I wouldn't – so if we wanted to – so if we said the Secretary's judgment that it is safe to go back to Haiti, that's not reviewable. I think that you can't – we wouldn't – we have not taught review and we probably could not seek review of the agency's – their application of the law to the facts or their factual findings. What we have said instead was that this was a preordained decision, that there really wasn't – If the Secretary determined to – if the Secretary decided to terminate the program but did the things it was supposed to do, including consulting with other agencies, looking at the various conditions, you would not be able to challenge that determination, correct? If the process that is required by the statute was undertaken in good faith and it really happened and there wasn't – so what happened here was that there was – what the district court – what we proved and what the district court found was what – it was unusual. There was – My question – I was just trying to get an answer to the prior question. If the process was followed, the procedures were followed, the agency – the Secretary proceeded in good faith and decided to terminate TPS for Haiti, you would not be able to challenge that decision. That's correct. Yes, that's correct. So it's not – so it's not – yeah. But just to go back to your explanation about you're not challenging the idea that the Secretary's determination was wrong, that she was wrong on the facts. I mean the way you would do that, wouldn't that be to bring an APA action that says the Secretary looked only at these facts, but the Secretary ignored other facts in the record and therefore didn't engage in reasoned decision-making and it's arbitrary and capricious? That's how you would do it. I mean there's no other way to challenge a determination, is there? You would bring an – I think an arbitrary and capricious challenge would cover all – could cover all kinds of claims, both substantive, ones that go to the merits, and process-based claims. And we're raising a process-based claim. And one way you know that, and this is something that was discussed in McNary itself, is that we're not – we didn't seek a ruling that – it has to be – the process was – there was a problem with the process. Nothing prevents the Secretary from doing it again. The district court hasn't held that PPS for Haiti can never be – What is the document or material that you rely on most heavily for showing at the beginning that this was a preordained result and that the process wasn't conducted in good faith sufficiently so that you were entitled to go beyond the record as you did? My notes suggest that you were focusing on a FOIA request that looked for criminal data and welfare-based data. But I'm concerned about this because it's not every day that we go beyond the record as far as happened here and that you allow depositions of decision-makers and past decision-makers once you have trials on these issues based on just an allegation of pretext. So what could you point to that clearly is in the record that the district court was entitled to look at and that the government hasn't objected to to suggest pretext? So there were materials that were released through FOIA. Some of that was information about requests, as you noted, about the criminal records of TPS recipients, which was an unusual request because that generally would – criminal activity would disqualify you from holding TPS status. So all of those – so in the joint appendix, everything that we had before we even brought the case is attached to our amended complaint. So that's in there. Then there was a lot of material that was in the administrative record itself. The supplemented administrative record or the original 100 pages or 200 pages, I guess, was 199? I don't remember the time. I don't remember. I didn't parse through to see what the court was relying on. Now, the timing of the court's ruling – so the court made – The court didn't rule, really, and didn't explain the decision to expand. I mean, we had the magistrate judge decision, but the floating nature of the boundaries of the administrative record here gives me pause. I wanted to see what you have that so clearly the district court could consider without objection. So I want to just mention that the district court made a finding under Overton Park in its decision, and there's a long finding about saying that the plaintiffs had made the Overton Park showing a strong showing of bad faith and improper behavior. And I think it was evidence that there was manipulation of the review process in order to reach a preordained result. So that finding has been made by the court. And the court – so in the opinion, the court relies heavily on the administrative record and sort of says what it's doing. So going back to the question that the government also answered, which is in Department of Commerce, the Supreme Court says it's not a showing of bad faith and it's not out of the ordinary when a new official comes in with a goal and they want to build a record in support of that goal. And it's not out of the ordinary when they're in touch with the White House about the formulation of policy. So doesn't Department of Commerce say that these are not acceptable – this is not an adequate showing of bad faith to go beyond the administrative record? Well, in the Department of Commerce case, I mean, the court looked at the material outside the administrative record and reversed because there was a showing that – It said it was error at that stage when all you had was influence from the White House, and it was only justified once it was clear that the justification the agency gave was not accurate, right? Well, it's – I think we – that seems to me to be precisely analogous here regardless of when – I mean, there was a ruling made. There was a lot of – The district court said explicitly the court does not question the substantive veracity of the secretary's decision. So whereas in Department of Commerce, the Supreme Court says you could go beyond the administrative record once it became clear that the justification was not accurate and didn't explain the decision. And here, the district court specifically said, like, I have no issue with the reasons the secretary gave for making the decision. It's not clear that those are false reasons. I'm only worried about the pressure from the White House on those other issues. Well, respectfully, I think that's a mischaracterization of what the district court held because what the district court is trying to say there is this isn't a merits appeal. But what the district court said explicitly in its decision is that the reasons that were stated in the Federal Register notice were not the real reasons for the decision. So in this – The district court is finding – he says that the defendant's manipulation of the facts in the record is highly suggestive of a pretextual decision. That's correct. That's supporting your view. Yeah. So yes, there was a lot of evidence, and it's similar to the evidence that was unearthed in the Department of Commerce case that made the court think there was a mismatch between what really – the sort of stated reasons for the decision. But is it – so tell me if I'm mistaken, but isn't the evidence that suggested it was a pretextual decision evidence of White House involvement in the decision-making and agenda-driven – agenda adherence idea about wanting to be influenced by the administration's priorities? That was the evidence that it said was suggestive. Some evidence. There was evidence that – there was evidence about things that happened – there's a lot of evidence in this case about a lot of process-based evidence. And I guess I want to mention one more – one thing, since the government was focusing specifically on the testimony of Leon Rodriguez, which the court did rely on, and that was evidence principally of what – so one of our – we think a procedural APA claim is a claim that the agency changed its practices with respect to the scope of its review without a justification or notice to suddenly change practice. And so there was evidence about what the past practices were. And that is what Mr. Rodriguez, as a former USCIS director, Leon Rodriguez, his testimony was about past practices. And I think that's very – that's pretty common. That's an instance in which you have to go beyond the administrative record in order to – Can I just ask about the change in practice? So your argument is that the change in practice is that at – when they designated Haiti, they had one interpretation of the TPS statute and that when they did the rescission, they had a different interpretation. But we know from FTC v. Fox that the requirement to explain your reasons for changing – the agency's obligation to explain its reasons for changing its position is just the obligation agencies have to engage in reasoned decision-making whenever they adopt a position. So in FTC v. Fox, the Supreme Court says you don't need to do something different when you change your position than you did initially when you adopted the first position because the statute doesn't make any distinction between the initial action and the change. So I guess my question is this. So do you think that when the prior administration designated Haiti, they had to articulate what their interpretation of the TPS statute was? Because if at time two the agency is required to do that in the notice, does it – I mean the adoption of the policy has to correspond to the change in policy. You can't do something more. So was the prior administration required to articulate how they interpreted the TPS statute when it first did the designation, and did they? You're well over your time, by the way. Please answer the question and then take a moment to sum up. Okay. The reasoned explanation requirement, it applies to both practices and, you know, and interpret – and like – and interpret – statutory interpretations. So the – here you had a designation of a particular country. You had a particular country for TPS. There are people in the country holding protected status who have substantial reliance interests. And so under the reasoned explanation requirement, if an agency is going to change its practices as dramatically as occurred here, something more is required than simply a terse notice that excludes a whole lot of conditions that were – But you don't disagree with what the Supreme Court says in Fox, which is you don't have to do something more to change a policy than you did to adopt the policy, right? My understanding is that agencies have to – they have to – I'm not sure where they would do it, but they need to – when they change a practice, they need to demonstrate awareness that they're doing so and articulate reasons for it. And that sort of keeps the – that's an important, you know, important limitation on agency action. So – Why don't you finish up? This was – there was ample evidence in the record here to support the district court's findings that we had raised serious questions on both procedural APA claims and on the equal protection claim, including evidence that Secretary Duke decided to terminate TPS for the sake of agenda adherence to the America First platform and that she – and that DHS officials changed documents that were waited for extension because the extension was not – because the documents – documents were waited for extension and that was not the conclusion that they were looking for and that, you know, there was manipulation from below and pressure from above that resulted in a pretextual and preordained decision. And the district court's findings were supported by numerous factual findings, none of which are challenged as clearly erroneous by the government. And so there is – and also there's a great deal of evidence to support the equal protection claim. There was all of the – there's substantial evidence to support each of the Arlington Heights factors. There's a very close connection between the evidence – All right. All right, thank you. We have your argument. We'll hear the rebuttal from Mr. Shinsbeck. Thank you, Your Honor. I'll be brief, just a couple of points. I just wanted to make sure – be clear on the McNary point. I think what McNary makes clear is, A, the challenge has to be a collateral challenge to a due process procedure involving individual – in an individual adjudication. And as we cited in numerous cases and plaintiffs have yet to cite any case that has recognized an APA claim like theirs, you know, that if you're challenging a procedure just, you know, that's linked to the final determination, then it's barred. And I'm not sure here what would be barred. You could – you know, Congress clearly didn't intend every type of APA action to be brought here where you could challenge the standard. Right, so I guess that's what I was asking before, so maybe you could answer it. Isn't it just – the way you challenge agency action under the APA is typically based on what we're calling process. It's typically that the agency failed to consider certain factors or didn't abide by a certain procedure, and the remedy usually is, well, you didn't do it the right way, and so we're going to vacate the agency decision and remand for reconsideration. I mean, isn't that how challenges to agency action work? I don't even – Yes, Your Honor, that's exactly – that's exactly right. And that would – you know, effectively, there would be nothing barred or nothing reasonable barred here if you could bring any APA challenge you can think of about, you know, how the agency arrived at the decision. And that's exactly what Congress, you know, didn't want. In fact, you know, this is a case in point where we're here, you know, in litigation now three and a half years, and that's longer than most countries have had TPS that have received it, although there are some longer ones. And then, you know, I just wanted to touch on a couple of other things. I mean, I think the finding of bad faith that was made kind of in the final decision but not at the time discovery was ordered. I think that is key, and I think a lot of – even the bad faith finding in the final decision is based on things like, you know, the court says specifically White House influence is probative of bad faith. I mean, that can't be right under Department of Commerce and under just general principles of administrative law. Okay. Can I ask you the question that I just asked the opposing counsel about the change in past practice? So my understanding from FCC versus Fox is that the obligation of the agency to explain a change in practice is simply the obligation to engage in reasoned decision making in all its decisions. And so, you know, the Supreme Court specifically rejected actually a precedent from our circuit that suggested you need to do something more when you change practice, and the Supreme Court says no, you have to do the same thing. Like you have to engage in reasoned decision making to adopt the policy and the same sort of reasoned decision making to change it. So if we're saying here that the agency had to somehow articulate the change in its interpretation of the TPS statute, doesn't that suggest at time one the agency to adopt the policy in the first place had to articulate that? And I don't see that articulation anywhere in the record. No, Your Honor, I agree with that assessment, and I think, you know, I'd be uncomfortable. I'm going to interrupt for a second, though. Couldn't you say that the structure of the statute is that there is a decision that's made at time one that is then revisited with different interests at play, potentially, at time for extension or designation, where you reevaluate facts, where you consider whether certain interests, such as the reliance interests that Chief Justice Roberts talked about in the DACA case, have developed, and you look for change in facts, but what is a kind of – there's no entitlement to TPS statute at the beginning, but once you've set that mechanism in motion, it seems to me that the statute contemplates possibly a kind of different set of presumptions, maybe a modified procedure going forward. So I'm not sure I would feel quite so comfortable equating time one and time two for extension or time three for redesignation, but am I wrong in that here? Well, Your Honor, I guess that led to my second point, which was, you know – well, first of all, HEDI has been extended many times since 2011, I think, was the last redesignation. And what we see in that – in each of those instances of extensions is to extend a standard is set forth. It's exactly the same standard, you know, that Secretary Duke used here, namely you look at the conditions that, you know, gave rise to the designation, the particular event, and the conditions surrounding it. All right. No, I get the argument. I get the argument that actually the agency didn't change its policy, and maybe that's right. But I'm – I just want to, you know, clarify a legal point, and it doesn't even have to be in the context of HEDI. It's just if DHS had a policy of interpreting the TPS statute a certain way, such as considering post-originating event occurrences, and then it changed that policy by adopting a different interpretation of the statute, under SEC v. 5, it has to articulate – it has to provide a rationale for the change the same way it provided a rationale for the adoption of the policy in the first place, right? That's right. But I mean, so I think you would – you know, in this case, I mean, just to answer the previous question, I mean, it may be a different inquiry at the designation and extension time because designation is obviously – everything's happening right then. But certainly in the HEDI case, there have been many extensions, and there is no articulation of an interpretation at those extension points or in the extension points of any other country – you know, any other country outside of HEDI such that, you know, now you can clearly say this is – this is – they're doing it in a way that's different than what they did before or that there's an interpretation. You know, to the extent they had a different interpretation, they certainly didn't say it previously, and so there's no – All right. We have the argument. Thank you both. We will reserve decision.